BROWN *v.* MAURY and others.

(*Nashville.* January 26th, 1887.)

1. MORTGAGE. *Description. Construction of deed. Tenant in common.*

A person taking a mortgage of an unascertained 200 acres of a 900 acre tract of land, acquires title to an *undivided* two-ninths of the entire tract; and generally, where a deed of a given quantity of land, parcel of a larger tract, does not locate it by its description, the purchaser becomes a tenant in common *pro rata* in the whole parcel.

2. SAME. *Description inserted after signing. Parol authority. Mortgagee having no notice.*

The description of the land intended to be conveyed by a mortgage may be inserted therein by a third person, upon parol authority of the mortgageor, after it is signed; and the mortgagee receiving said mortgage, without notice of the manner of its execution, and paying a valuable consideration for it, can enforce it in a court of equity.

---

FROM WILLIAMSON.

---

Appeal from the Chancery Court of Williamson County. W. S. FLEMING, Ch.

W. B. REECE, for Brown.

JESSE G. WALLACE, for Maury and others.

SNODGRASS, J. Maury was indebted to Campbell Brown as trustee of R. E. Scott, and had given him a mortgage on certain lots in Nashville to secure the indebtedness. Being desirous of remov-

ing this mortgage, he undertook, for this purpose, to give other security, and procured his sister, Mrs. M. F. Perkins, to execute a mortgage on certan lands in Williamson County, to be substituted for his own. He visited his sister and procured her to sign a mortgage on the 27th of April, 1876. She most probably did not know at the time of signing it that it was to replace the mortgage on Maury's own land. Nor is this material. She knew the amount secured, and the terms. The intention was to execute a mortgage on 200 acres out of several hundred belonging to her west of the Hillsboro pike. Of neither this 200 acres, nor of the entire tract including it, was any description written in the deed when she signed it; but the facts and circumstances make it clear that she authorized Maury to fill in the description, which he did after it was signed; and her authority to him for such purpose was valid and binding, though not written.

Maury and E. M. Perkins, a son of Mrs. Perkins, signed the deed as witnesses. They went to Franklin, and there Maury put in the description, and E. M. Perkins and he proved the execution of the deed before the Clerk of the County Court, and Maury had it registered on the same day. He then delivered it to Campbell Brown, and obtained the release of his own mortgage, without any knowledge on the part of Brown as to the manner in which the deed was obtained or prepared. The description inserted was as follows:

"The following real estate, situated in Williamson County, State of Tennessee, and bounded as follows: Being 200 acres of a tract commencing at a point on the east bank of West Harpeth River, the same being the northeast corner of the tract lately owned by Mrs. S. A. Ellis; running thence west to Peter Perkins' line; thence westwardly to a rock at a point half way between two springs designated in the will of the late Nicholas Perkins, deceased; thence due west with the western boundary of said Nicholas Perkins' lane, and south of the lane dividing the pawpaw tract from the West Harpeth tract, and including the land in the bend opposite the dwelling-house and the land in the fork of Big Harpeth and West Harpeth, the east and west line being drawn along the line dividing the pawpaw tract from the West Harpeth tract, and continued west to the west boundary line of said Nicholas Perkins' land, east of South Harpeth, leaving the Mountpier tract to the north, containing 1,600 acres more or less. Said 200 acres lies west of the Hillsboro turnpike. The entire tract was devised to N. E. Perkins by his father's (Nicholas Perkins) will, recorded in Will Book 9, page 95, and by him sold, transferred, and conveyed to me by deeds recorded in the Register's Office, Williamson County, Book No. 1, pages 141, 142, and 143, respectively."

Default in payment having been made, the bill in this cause was filed to foreclose the mortgage.

Mrs. Perkins resists, and in her answer, while admitting that she signed the mortgage to secure the $3,000, upon Maury's request to her "to mortgage 200 acres of her land lying west of the Hillsboro turnpike." She insists that there was no description in the deed when given, and denies that she authorized the insertion of any description. She denies that the description inserted is sufficient; says she has 900 acres of the 1,600 described in the entire deed west of the Hillsboro pike, some of it worth $40 and $50 per acre, and some as little as $2 per acre.

Upon the facts detailed the only real question in the case is as to the sufficiency of the description.

It is the case of an entire tract specifically described by metes and bounds, including 900 acres west of a given line (the pike), and 200 acres of the 900 conveyed, without designating which two.

The mortgage is but a security for the debt, executed to a creditor, who surrendered in consequence an equally valuable security, with no participation in or knowledge of any wrong upon the mortgageor, if any was committed. It is clear that it should be sustained in equity if it can be done under the authorities, and it is equally clear that it can be so done.

Mr. Washburn, in his work on Real Property, states the rule in reference to such description by quotations from certain cases, as follows:

"Where A granted one acre of woodland lying in common with his other woodland, it was held to be such an *aliquot* part of his woodland in common, as one acre would be to the whole woodland owned by the grantor. And upon a similar principle, where a deed of a given quantity of land, parcel of a larger tract, does not locate it by its description, the purchaser becomes a tenant in common *pro rata* in the whole parcel." 1 Wash., 4th Ed., page 654.

Several cases are cited to sustain the text, which do sustain it, and we hold they are sound in reason and equity.

Applying the rule thus laid down to the mortgage in question, it would vest the mortgagee with an undivided two-ninths interest in the nine hundred acres described in the boundaries given lying west of the Hillsboro pike, that being the proportion which two hundred acres—the amount conveyed—bears to the nine hundred from which it is to be taken; and if sold under decree for satisfaction of balance due, the purchaser will become a tenant in common with Mrs. Perkins to the extent of an undivided two-ninths of the nine hundred acres.

The report of the Commission of Referees is disapproved, decree of the Chancellor reversed, and decree rendered here in favor of complainant for the amount of his debt and cost of the cause, and for a sale as indicated upon the terms prayed in the bill, which will be made by the Clerk of

this Court unless the amount decreed is paid within sixty days.

Judges Turney and Caldwell do not concur in so much of this opinion as holds the description sufficient.